Attorney No. 35673

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALDSON TWYMAN,<br>Plaintiff, | ) | |
| v. | ) | No. |
| S&M AUTO BROKERS, INC., SAED IHMOUD and MOHAMMED IHMOUD | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

# COMPLAINT

Plaintiff, DONALDSON TWYMAN, through his undersigned attorneys, complains against Defendants as follows:

## Statement of the Case

1. On October 16, 2015, Donaldson Twyman purchased a 2013 Infiniti FX37 (VIN JN8CS1MW8DM170265) ("Infiniti") from S&M Auto Brokers, Inc. ("S&M") for a price of $34,995.00. *See* Exhibit 1. Twyman signed an Arbitration Agreement with S&M, agreeing to submit this dispute to the American Arbitration Association ("AAA") for binding arbitration. *See* Exhibit 2. S&M refused to respond to the Arbitration Demand, though it was requested to do so by the AAA. Exhibit 3. After S&M refused to arbitrate the AAA notified S&M that it had waived its right to arbitration, and that the parties could resolve their dispute in court. Exhibit 4. Therefore, S&M waived its right to require arbitration.

2. Twyman purchased the 2013 Infiniti as a result of deception by S&M and its owner, Saed Ihmoud and General Manager, Mohammed Ihmoud. Defendants misrepresented or omitted numerous material facts in the online advertisement for the Infiniti, which Twyman viewed before deciding to go to S&M to consider purchasing it. The advertisement misrepresented and

understated the Infiniti's mileage. It also failed to disclose that it was a rebuilt wreck with a bent frame, was dangerous to drive, and that its odometer had been rolled back. When Twyman contacted S&M to discuss possibly purchasing the Infiniti, sales representatives of S&M misrepresented that the Infiniti had never been in an accident, and failed to disclose that the Infiniti was a rebuilt wreck with a bent frame and dangerous to drive, and that its odometer had been rolled back. Further, the sales contract and odometer disclosure for the Infiniti understated the mileage, as the odometer had been rolled back.

3. Had Twyman known the truth about the Infiniti, he would not have purchased it.

4. S&M and its owner and General Manager's conduct in this matter is not an isolated incident. They have a pattern and practice of selling rebuilt wrecks and dangerous vehicles to unsuspecting consumers. A Cook County jury recently awarded $40,000 in punitive damages against S&M for defrauding a consumer in the same manner it defrauded Twyman.

**Parties**

5. Plaintiff Twyman is a citizen of Indiana and resides in Fishers, Indiana.

6. Defendant S&M is an Illinois corporation with its principal place of business in Illinois and operates a number of used car dealerships in Chicago, Illinois.

7. Defendant Saed Ihmoud is a citizen of Illinois and resides in Illinois. Saed is the owner of S&M.

8. Defendant Mohammed Ihmoud is a citizen of Illinois and resides in Illinois. Mohammed is the General Manager of S&M.

**Jurisdiction and Venue**

9. This Court has jurisdiction over this matter. First, there is federal question subject matter jurisdiction under 49 U.S.C. § 32705 ("Federal Odometer Act"). Second, there is diversity

jurisdiction under 28 U.S.C. § 1332. Plaintiff and Defendants are residents and citizens of different states, and the amount in controversy exceeds $75,000 excluding costs and interest. Twyman suffered in excess of $30,000 in actual damages. He is also is also entitled to punitive damages of $120,000 due to the willful and wanton nature of the Defendants' conduct and also because it is part of long standing pattern and practice of similar misconduct which needs to be punished and deterred.

10. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to Plaintiff's claims against Defendants occurred in this district.

**Facts Common to All Counts**

11. Approximately one week prior to visiting S&M to consider purchasing the Infiniti, Twyman saw an S&M online advertisement for the Infiniti, which on information and belief was created and published under the supervision of Saed and Mohammed. The advertisement misrepresented and omitted material facts. The advertisement failed to disclose that the Infiniti had been in a serious accident, was a rebuilt wreck with a bent frame, dangerous to drive, and suffered from many mechanical and structural problems. The advertisement also materially misstated the mileage of the Infiniti as only having 17,137 miles, when in fact the odometer had been rolled back.

12. As a result of the advertisement's material misstatements and omissions including the false low mileage claim, Twyman called S&M to inquire about the Infiniti. He spoke with S&M representatives several times to negotiate the potential price down from the $35,888 advertised price. In the first phone call with Twyman, an S&M representative misrepresented that the Infiniti had not been in any accident when Twyman asked about its history.

13. On October 16, 2015, Twyman visited S&M to consider purchasing the Infiniti.

14. When he got there, the salesman showed him the Infiniti. Twyman wanted to know why a vehicle with such low mileage was for sale. He asked the salesman if the vehicle had ever been in an accident, as he had previously asked over the phone. The salesman represented that the vehicle had not been in an accident.

15. Twyman believed the salesman and agreed to purchase the Infiniti.

16. Twyman paid $34,995 for the car. He received a trade-in value of $26,000 for a 2013 Mercedes-Benz E350 4matic for which he owed $29,290.64. The $3,390.64 still owed on the Mercedes-Benz E350 was added to the price of the balance owed on the Infiniti. In addition, Twyman paid: (1) a documentary fee of $166.00; (2) Illinois sales tax of $573.00; and (3) a drive away permit fee of $10.00. The total balance due was $39,134.64.

17. Twyman financed $35,744 of the amount owed through Federal Express Employees Credit Association at a 3.5% interest rate, for a 60 month period. He paid $3,390.64 in cash. He also paid an additional $647.27 on the sale in Indiana sales tax.

18. After purchasing the Infiniti, Twyman drove it back to his home in Indiana. On the drive home when he accelerated to highway speed, the car shook and steering pulled off center. Twyman notified S&M of the problems immediately. Soon thereafter, Twyman experienced numerous issues with the Infiniti including problems with the alignment, problems with the engine, and the check engine light turning on.

19. On October 20, 2015, Twyman took the Infiniti to Dreyer & Reinhbold Infiniti ("Dreyer"), a local Infiniti dealer, for service under the manufacturer's warranty that S&M represented came with the vehicle. Dreyer reviewed the warranty claim history on the vehicle.

20. The warranty claim history revealed that the Infiniti's odometer had been rolled back at some point and did not display the correct mileage. On the odometer disclosure statement

dated October 16, 2015, S&M stated that the odometer reading on that date was 17,137. *See* Exhibit 5. The warranty claim history revealed that a warranty claim was attempted on March 20, 2015, at which time the odometer reading was recorded at 19,202. The odometer reading was also recorded on November 18, 2014 (nearly a year before Twyman purchased the vehicle), at 17,012. *See* Exhibit 6.

21. Dreyer informed Twyman that needed repairs to the Infiniti included: (1) replacing the steering column; (2) replacing the catalytic converter; (3) replacing all 4 tires which were out of round, different brands, and one of which was punctured; (4) resealing a leaking oil pan; (5) correcting a transmission problem causing improper shifting; (6) performing a wheel alignment; (7) replacing a damaged left front wheel hub/bearing assembly; (8) reinitializing the nonfunctioning rear parking camera; and (9) replacing broken washer nozzle clips and missing washer fluid hose. The number and type of mechanical repairs needed were not normal for a vehicle with only just over 17,000 miles, but were indicative of a vehicle being in a severe accident.

22. Dreyer confirmed that the Infiniti had in fact been in a previous accident. It informed Twyman that the body of the Infiniti revealed obvious crash damage including: (1) misaligned rear hatch; (2) rear bumper repair work; (3) front bumper replacement; (4) replaced front crash bar; (5) misaligned front hood; (6) misaligned doors resulting in gaps between vehicle and closed doors; (7) creases in the left and right front wheel arches; (8) entire left side repainted; and (9) most of the right side of the vehicle repainted.

23. Dreyer estimated the cost of mechanical repairs to the vehicle would exceed $7,500. Dreyer did not attempt to estimate the cost of repairing the damage to the body and frame of the Infiniti.

24. As a result of the vehicle's accident history, substandard repairs, and unknown mileage, the vehicle had a severely diminished value at the time of sale.

25. Twyman has suffered actual damages of at least $30,000, which includes the diminished value of the Infiniti, cost of repairs, excess finance charges, and aggravation and inconvenience damages.

**S&M's Pattern and Practice of Selling Damaged Vehicles**

26. S&M and its owners have a pattern and practice of selling rebuilt wrecks and concealing the true history and defects from buyers in order to induce them to purchase these substandard and dangerous cars. There have been several lawsuits and/or judgments against them for engaging in fraudulent behavior similar to what Twyman experienced.

27. In *Tate v. S&M Auto Brokers Inc.*, Case No. 2014 M1 132291, S&M was found guilty of selling Mary M. Tate (Ms. Tate) a rebuilt wreck and fraudulently concealing and misrepresenting material facts about the 2011 Chevy Malibu's (Malibu) condition and history, and ordered to pay $40,000 in punitive damages to Ms. Tate. Similar to the case at hand, Ms. Tate purchased the Malibu only to find out that it was actually a severely damaged wreck that could have caused her great harm. S&M was caught red-handed when it produced the bill of sale from the auction where it bought the Malibu, which proved it had been on notice of the damage before selling it to Ms. Tate. Specifically, S&M knew that the Malibu had "frame/unibody" damage, but concealed this from Ms. Tate.

28. *Burgess v. S&M Auto Brokers, Inc.*, Case No. 15 CH 09288, involves similar allegations of S&M misrepresenting and concealing the condition and history of a damaged and dangerous vehicle to make a profit from an unsuspecting customer. Joshua Burgess alleges that S&M misrepresented the condition of a 2011 Ford Explorer, and knew but failed to disclose that

the vehicle had been in not one, but two accidents and was severely damaged as a result of that accident. Similar to this case, several parts of the car had been found to have been replaced, rebuilt, and repainted. Also like Twyman's Infiniti, the 2011 Ford Explorer was unsafe to drive, and a danger to the driver and others on the road.

29. Another example of S&M's pattern and practice involved another customer, Carmen Romo. S&M sold a damaged wreck to Romo as well, by hiding the true history of the car. S&M not only sold Romo a rebuilt wreck, but also turned off the car's warning light, which turned on while Romo was driving home. S&M exhibited similar fraudulent concealment in this case, when they falsely represented the odometer's mileage was accurate to conceal the true mileage of the Infiniti, when, in fact, the odometer had been rolled back.

30. All of the above cases show that S&M has a pattern and practice of selling unmerchantable wrecks with substandard repairs to its customers and concealing or misrepresenting material facts. S&M's practice of selling severely damaged vehicles to unknowing customers violates the Illinois Vehicle Code by putting unsafe cars on the road. This dangerous practice which violates public policy must be deterred through the entry of substantial punitive damages in this case.

**COUNT I**

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)**

31. Twyman repeats and realleges herein Paragraphs 1-30.

32. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2, states in relevant part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment,

> suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful…

33. Further, the Illinois Vehicle Code makes it "unlawful for any person to . . . knowingly permit to be driven or moved on any highway any vehicle . . . which is in such unsafe condition as to endanger any person or property. . . ." 625 ILCS 5/12-101(a). Thus, Defendants had a statutory obligation not to put unsafe cars on the road by deceiving Twyman into purchasing an unsafe car.

34. Twyman is a consumer within the meaning of 815 ILCS 505/1(e).

35. S&M's sale of the Infiniti constituted the sale of merchandise and commerce as defined by 815 ILCS 505/1(b).

36. S&M misrepresented the following material facts in violation of the Consumer Fraud Act by misrepresenting:

a. That the Infiniti had not been in an accident; and

b. That the mileage on the Infiniti at the time of sale was 17,137.

37. Defendants failed to disclose the damaged condition of the Infiniti resulting from being in an accident and the substandard repairs made to it following that accident, and that the odometer had been rolled back. Defendants had knowledge of these facts as they would have been obvious to any knowledgeable person in the industry and would have been revealed during inspection of the vehicle.

38. Defendants intended for Twyman to rely on their misrepresentations and/or omissions. Defendants had a strong incentive to make omissions and/or misrepresentations about the Infiniti's accident history, unknown mileage, inaccurate odometer, substandard repairs, and unrepaired damage because they knew that a consumer, like Twyman, would not purchase the Infiniti if he knew of its true history, condition and unknown mileage.

39. Had Twyman known the truth about the Infiniti, he would not have purchased it.

40. On information and belief, Saed and Mohammed Ihmoud were personally involved in supervising the publication of the online advertisement for the Infiniti that Twyman viewed. On information and belief, S&M at the direction of Saed and Mohammed Ihmoud knowingly omitted from the online advertisement, material facts regarding the Infiniti's extensive damage and crash history, and the odometer rollback and misstated its mileage.

41. Defendants knew, or but for their recklessness, should have known, that the Infiniti was in an accident, was unsafe to drive and that the odometer had been rolled back.

42. As a direct and proximate result of Defendants' fraud, Twyman suffered damages of at least $30,000 including, but not limited to:

a. Paying an inflated price for the vehicle;

b. Finance charges that would not have been incurred;

c. Repair costs that would not have been incurred;

d. Aggravation and inconvenience damages.

43. Defendants' conduct was willful and wanton and part of a pattern and practice of deception, calling for the imposition of punitive damages four times the actual damages or in excess of $120,000, to punish and deter similar conduct in the future, and stop Defendants from continuing to violate the Illinois Vehicle Code by putting unsafe cars on the road.

WHEREFORE Twyman requests that the Court enter judgment in his favor and against the Defendants as follows:

A. Actual damages in an amount to be proven at trial;

B. The costs incurred in this litigation, including expert fees;

C. Attorneys' fees;

D. Aggravation and inconvenience damages;

E. Punitive damages; and

F. Any other relief that the Court deems just.

**COUNT II**

**(Violation of the Federal and State Odometer Acts)**

44. Twyman repeats and realleges herein paragraphs 1-43.

45. Section 32705(a) of the Federal Odometer Act provides in relevant part:

> (1) Disclosure Requirements - Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:
>
> > (A) Disclosure of the cumulative mileage registered on the odometer.
> >
> > (B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.
>
> (2) A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation.

46. Section 32710(a) of the Federal Odometer Act provides in relevant part:

> A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater.

47. Illinois has a virtually identical odometer disclosure statute. 625 ILCS 5/3-112.1.

48. S&M made false mileage statements with intent to defraud in violation of 49 U.S.C. § 32705 and 625 ILCS 5/3-112.1, when it falsely represented that the Infiniti's odometer accurately displayed that the vehicle had 17,137 miles on it at the time of sale. S&M knew or was reckless in not knowing that the odometer was inaccurate.

49. As a proximate result of S&M's violation of the Federal and State Odometer Acts, Twyman suffered actual damages in excess of $30,000. Pursuant to 49 U.S.C. § 32710, Twyman is entitled to three times his actual damages, plus his reasonable attorneys' fees and costs.

WHEREFORE Twyman requests that the Court enter judgment in his favor and against S&M as follows:

A. Treble actual damages;

B. Reasonable attorneys' and expert fees and costs; and

C. Any other relief that the Court deems just.

**COUNT III**

**(Common Law Fraud)**

50. Twyman repeats and realleges herein paragraphs 1-49.

51. S&M made material misrepresentations and omissions, as alleged herein, regarding the Infiniti's condition and history, and mileage.

52. S&M had a duty to disclose all material information about the Infiniti, and to truthfully and accurately describe the Infiniti's quality, condition, history, and mileage.

53. At the time of the sale, S&M knew the material misstatements and omissions were false.

54. The misrepresentations and omissions were material in that a reasonable consumer, such as Twyman, would have relied upon them in making vehicle purchase decisions.

55. S&M made such material misrepresentations and omissions regarding the Infiniti's quality and condition, and mileage, intending to induce Twyman to purchase the Infiniti.

56. Twyman relied on S&M's material misrepresentations and omissions, regarding the quality, condition, history, and mileage of the Infiniti in agreeing to purchase the Infiniti.

57. Had Twyman known the facts that S&M omitted and misrepresented, he would not have purchased the Infiniti.

58. Further, S&M knowingly concealed from Twyman that the Infiniti had been in a serious accident, and that as a result of this accident, had extensive damage to it, and that the odometer had been rolled back.

59. The concealment of the Infiniti's accident history and extensive damage, and actual mileage were material facts.

60. S&M concealed the accident history, extensive damage to the Infiniti, and mileage with the intent to deceive Twyman, and to induce him to purchase the Infiniti.

61. Twyman purchased the Infiniti in justifiable reliance on the facts as he knew them: (1) that the Infiniti had not been in an accident and had not suffered extensive damage; and (2) that the mileage was as advertised.

62. As a direct and proximate result of S&M's material misrepresentations, omissions, and fraudulent concealments as alleged herein, Twyman suffered damages including, but not limited to:

a. Paying an inflated price for the vehicle;

b. Finance charges that would not have been incurred;

c. Repair costs that would not have been incurred; and

d. Aggravation and inconvenience.

63. Punitive damages are warranted because of S&M's misconduct is willful and wanton and because it is part of a pattern and practice of engaging in fraudulent conduct. Such damages are necessary to deter the dealership from engaging in similar misconduct in the future which endangered Twyman and the public.

WHEREFORE Twyman requests that the Court enter judgment in his favor and against S&M as follows:

A. Actual damages in an amount to be proven at trial;

B. Reasonable expenses of litigation, including expert fees and costs;

C. Aggravation and inconvenience;

D. Punitive damages; and

E. Any other relief that the Court deems just.

**DEMAND FOR JURY TRIAL**

Pursuant to FRCP 38(b), Plaintiff requests a trial by jury on the claims so triable.

Dated: April 8, 2016

DONALDSON TWYMAN

By: s/Peter S. Lubin
One of his Attorneys

Peter S. Lubin
Vincent L. DiTommaso
Andrew C. Murphy
DiTOMMASO♦LUBIN, P.C.
17W220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181-4480
(630) 333-0000
(630) 333-0333 (Fax)
psl@ditommasolaw.com
vdt@ditommasolaw.com
acm@ditommasolaw.com

# EXHIBIT 1

Purchase Contract /
Bill of Sale

# S&M AUTO BROKERS INC

5801 S. WESTERN AVE
CHICAGO, IL 60636
Phone: (773)434-1201 Fax: (773)434-9191
Email Address SANDMAUTO@YAHOO.COM



**Invoice ID: 6761**

**Sale Date: 10/16/2015 12:31 PM**

| Buyer | | |
|---|---|---|
| Buyer's Name: DONALDSON C TWYMAN | | |
| Date Of Birth: 1/20/1955 | Social Security No.: On File | Drivers License No.: 3570140504 |
| Street Address: 9057 MERCER DR | | |
| City, State, Zip: FISHERS, IN 46038 | | |
| Home Phone No | Work Phone No. | Cell Phone No.: (317) 315-7371 |

| Cobuyer | | |
|---|---|---|
| Cobuyer's Name | | |
| Date Of Birth | Social Securiy No. | Driver's License No. |
| Street Address | | |
| City, State, Zip: , | | |
| Home Phone No. | Work Phone No. | Cell Phone No. |

S&M Auto Brokers herby Sells and Buyers, jointly and severally, herby purchase the following motor vehicle for the Total Sale Price and upon the terms and conditions set forth on this contract of sale. Buyers acknowledge delivery and actual receipt and acceptance of the motor vehicle in good running condition.

| Year | Make | Model | Body Style | Color | Vehicle Identification Number | Mileage | Stock No. |
|---|---|---|---|---|---|---|---|
| 2013 | INFINITI | FX37 | CARRY A | WHITE | JN8CS1MW8DM170265 | 17,137 | 7115 |

**Description of Trade-In and Terms of Trade.**

| Trade Year | Trade Make | Trade Model |
|---|---|---|
| 2013 | MERCEDES BEN | E350 4MATIC |

Trade VIN: WDDHF8JB3DA743595

| Body Style | Color | Mileage |
|---|---|---|
| SEDAN | BLACK | 33501 |

| | |
|---|---|
| Trade Allowance: | $26,000.00 |
| Estimated Balance Owed: | $29,390.64 |
| **Net Allowance on Trade:** | **($3,390.64)** |

I certify that the above information about my trade in is true and accurate, and I agree to trade in the vehicle described above upon the terms above, and if the balance owed is greater than above, I agree to pay the additional amount in cash upon request.

Signature (x) ____

**Detailed credits to purchaser.**

| | |
|---|---|
| Previous Deposits: | $0.00 |
| Cash Received: | $0.00 |
| Check No.: | $0.00 |
| Credit Card Approval No. | $0.00 |
| Debit Card Approval No. | $0.00 |
| Trade Net Allowance: | ($3,390.64) |
| | $0.00 |
| Other: | $0.00 |
| **Total Credit:** | **($3,390.64)** |

**Detailed Terms of Sale.**

| | |
|---|---|
| **Cash Price of Vehicle:** | **$34,995.00** |
| **Documentary Fee:** | **$166.00** |
| Less Trade Allowance: | $26,000.00 |
| Taxable Cash Price: | $9,161.00 |
| IL State Sales Tax: @ 6.25% | $572.56 |
| Cook County Sales Tax: @ 0.00% | $0.00 |
| City of Chicago Sales Tax: @ 0.00% | $0.00 |
| **Total Sales Tax: @ 6.25%** | **$573.00** |
| Title Registration Fee: | $0.00 |
| Drive Away Permit Fee: | $10.00 |
| Total Registration Fees Paid to IL SOS: | $10.00 |
| | $0.00 |
| **Total Sale Price:** | **$35,744.00** |
| **Unpaid Cash Balance Due:** | **$39,134.64** |

**NO PUBLIC LIABILTY INSURANCE ISSUED WITH THIS TRANSACTION.**

____ DEALER ARRANGED FINANCING. In the event of a time sale, S&M Auto Brokers SHALL NOT BE OBLIGATED TO SELL UNTIL AND UNLESS a finance source approves this order and agrees to purchase of a retail installment contract between Customer and Dealer based on this order. As part of obtaining financing, Customer agrees to provide Dealer with a true, correct and complete credit application and cooperate fully in obtaining financing including the providing of any supporting documentation. This agreement may be cancelled by the Dealer if it determines that it cannot obtain a third party approval for customer on the agreed terms within 7 business days of the date of this agreement. If the Contract is terminated due to the inability to obtain third party financing, Customer agrees to return the vehicle within 24 hours of notice from Dealership, and Dealer agrees to return the Customer's trade and down payment if applicable. S&M Auto Brokers may repossess the vehicle if Customer refuses to return it. After the return of the vehicle, Customer acknowledges that he/she remains liable to Dealer for any damage to the vehicle or for loss suffered by Dealer, including reasonable attorney's fees as a result of Customer's failure to timely return the vehicle, or as a result of false statements contained in the credit application or by Customer's failure to cooperate in obtaining Financing

____ IMMEDIATE DELIVERY SHORT TERM FINANCING. I accept immediate delivery and possession of the subject vehicle. in exchange for such possession, I promise to pay S&M Auto Brokers the remainder of the unpaid cash balance in accordance with the SHORT TERM FINANCING agreement attached hereto and made a part hereof. If I do not pay pursuant to the terms of the SHORT TERM FINANCING agreement, I understand that I am in default, and that I have breached this contract and will be liable to Dealer for damages set out herein, and agree to pay reasonable attorney's fees in addition to any other recovery by S&M Auto Brokers. SHORT TERM FINANCING AS FOLLOWS

| No. of Payments | Amount of Payment | Duration of Payment | Payment Due Date |
|---|---|---|---|
| 1 | 39134.64 | once | 10/17/15 |
| | | | |
| | | | |

Customer agrees to pay delinquency charge of $50.00 on each payment that is not paid in full when due. If any payment made by check and did not clear through the bank, then a fee of $50.00 is charged for each check. Upon occurrence of any default of this contract S&M Auto Brokers may accelerate and declare due all of the remaining balance of cash price, and Customer authorizes Dealership to repossess the vehicle and shall pay a minimum of $500.00 repossession fee, a storage fee of $50.00 per day plus any additional charges incurred by S&M Auto Brokers due to Customer's default on terms or breach of contract.

____ USED VEHICLE. "AS IS" "No Warranty": S&M Auto Brokers TO THE FULLEST EXTEND PERMITTED BY LAW, EXPRESSLY DISCLAIMS AND EXCLUDES ANY AND ALL WARRANTIES, WHETHER EXPRESSED OR IMPLIED, WITH RESPECT TO THE USED VEHICLE SOLD HEREUNDER, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND STATES THAT THIS IS AN "AS IS" SALE.

Initials

FTC WINDOW STICKER. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM (BUYER'S GUIDE) OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

THIS TRANSACTION IS NON-CANCELLABLE AFTER THE SIGNING OF THIS AGREEMENT EXCEPT AS PROVIDED HEREIN. IF YOU FAIL TO COMPLY WITH YOUR OBLIGATIONS UNDER THIS CONTRACT, YOU WILL BE LIABLE FOR THE REASONABLE ATTORNEY'S FEES INCURRED BY S&M AUTO BROKERS IN THE ENFORCEMENT OF THE CONTRACT, AS WELL AS ANY OTHER CHARGES.

I ACKNOWLEDGE THAT S&M AUTO BROKERS AND ITS AGENTS HAVE MADE NO REPRESENTATIONS, AGREEMENTS OR PROMISES, CONCERNING THE CONTRACT FINANCING OR THE VEHICLE BEING PURCHASED HEREUNDER, THAT DO NOT APPEAR IN WRITING. I CERTIFY THAT I AM 18 YEARS OR OLDER. I ACKNOWLEDGE THAT I HAVE READ THE TERMS OF THIS CONTRACT AND THAT I HAVE RECEIVED A COPY OF IT

(X) ____ Signature of Customer

Signature of S&M Auto Brokers agent.

(X) ____ Signature of Customer

# EXHIBIT 2

# ARBITRATION AGREEMENT

| Buyer(s) Name(s) | Dealer Name |
|---|---|
| DONALDSON C TWYMAN | S&M AUTO BROKERS INC |
| **Vehicle Description** | **VIN** |
| 2013 INFINITI FX37 CARRY ALL WHITE | JN8CS1MW8DM170265 |

In this Arbitration Agreement the term "you" refers to the buyer(s) who sign below. The term "we" refers to S&M AUTO BROKERS INC (Dealer). By signing this Arbitration Agreement, you and we agree to submit our disputes to arbitration. By agreeing to submit our disputes to arbitration, you and we voluntarily give up the right to go to court and the right to a jury trial.

You understand that this vehicle is being sold "AS IS" with no warranty as to the condition of the vehicle or the condition of the frame. You hereby acknowledge that you have had the opportunity to inspect the vehicle and run a car history search with companies that provide such service at your expense, and agree to accept it in its current condition. There have been no guaranties made to you about the condition of the vehicle or the frame of vehicle.

Any dispute arising out of or related to the purchase, servicing or repair of said vehicle from Dealer including any dispute over whether a dispute is subject to arbitration shall be resolved by arbitration before a single arbitrator pursuant to the Binding Arbitration Rules (the "Rules"), in effect on the date of this agreement, of the AMERICAN ARBITRATION ASSOCIATION (AAA), WHICH IS LOCATED AT 225 N. MICHIGAN AVE, SUTTE 1840, CHICAGO,ILLINOIS 60601, phone number 312-616-6560. The rules may be accessed on the American Arbitration Association's website at www.adr.org. Any arbitration hearing shall be held in Chicago, Illinois unless the parties mutually agree otherwise or unless the arbitrator determines that a different location would better serve the convenience of the parties Notwithstanding the foregoing, the parties may, by mutual agreement, resolve their dispute by using any recognized arbitration institution.

The Arbitration Agreement is incorporated into and made a part of any and all agreements or contracts between the parties executed on or about the date shown or any related agreements or contracts entered into, before, on or after the date. This Arbitration Agreement shall survive the expiration or voiding of any such other agreements or contracts.

If either party to this Arbitration Agreement files a lawsuit in contravention of this Arbitration Agreement and refuses to voluntarily withdraw such suit upon receiving notice by the other party of the obligation to arbitrate, then the party seeking to compel arbitration shall be entitled to reasonable attorneys, fees incurred in successfully compelling arbitration

The arbitrator's award shall be final and binding and based upon applicable law. Judgment on the award may be entered by any court having jurisdiction thereof.

The arbitration fees, as set forth in the then established fee schedules of the AAA (or any alternative arbitral institution mutually selected by the parties), shall be allocated as designated by AAA.

| | | | |
|---|---|---|---|
| [signature] | 10/16/2015 | | 10/16/2015 |
| Signature of Buyer | Date | Signature of Co-Buyer | Date |
| [signature] | | 10/16/2015 | |
| Signature of Dealer Agent | | Date | |

# EXHIBIT 3

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

February 26, 2016

F & M Auto Brokers, Inc.
5801 South Western Avenue
Chicago, IL 60636
Via Email to: sandmauto@yahoo.com

**Case Number: 01-16-0000-1360**

Donaldson C. Twyman
-Vs-
F & M Auto Brokers, Inc.

Dear F & M Auto Brokers, Inc.

We have not received the administrative fees and arbitrator compensation from respondent as requested in our previous correspondence. Respondent is requested to remit payment in the amount of **$3450** to the AAA to be received by **March 11, 2016.** As the claimant has met the filing requirements, respondent's fee is due regardless of whether the case settles or is withdrawn.

If payment was already sent, please send an email with the payment details so that payment is properly allocated. If this non-payment is simply an oversight on respondent's behalf, we trust payment will be made without delay.

Please note: should the business not comply with our request by the above response date, we may decline to administer any other consumer disputes involving this business and request that the business remove the AAA name from its arbitration clause so that there is no confusion to the public regarding our decision. Furthermore, pursuant to the R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

**At this time we are inquiring as to whether the consumer is willing to pay this outstanding amount, minus the expedited review fee of $250, and seek recovery of these fees through the arbitrator's award. Claimant is not obligated to pay respondent's fee. Should claimant decide to advance the business' portion of the fee, please email us before the business' response deadline.**

If we do not timely receive the business' portion of the filing fees, we will notify the parties that we have administratively closed this case and refund any payment received from claimant. Payment may be made by credit card, check or money order. To pay by credit card, please return the attached authorization to us. Please make checks/money orders payable to the American Arbitration Association. Checks should be mailed directly to the address above. Please reference the case number to ensure your payment is properly applied.

Thank you for your attention to this matter. If for any reason respondent will not be able to comply with our request by the noted response date, please send an email requesting an extension prior to the deadline.
Please **email** consumerfiling@adr.org if you have any questions.

Sincerely,

Consumer Filing Team
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

Cc: Peter S. Lubin, Esq.
DiTommaso-Lubin, PC
17 West 220 22nd Street
Suite 410
Oakbrook Terrace, IL 60181
Via Email to: psl@ditommasolaw.com

# EXHIBIT 4

AMERICAN ARBITRATION ASSOCIATION®
INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

March 22, 2016

Peter S. Lubin, Esq.
DiTommaso-Lubin, PC
17 West 220 22nd Street
Suite 410
Oakbrook Terrace, IL 60181
**Via Email to: psl@ditommasolaw.com**

F & M Auto Brokers, Inc.
5801 South Western Avenue
Chicago, IL 60636
**Via Email to: sandmauto@yahoo.com**

Case Number: 01-16-0000-1360

Donaldson C. Twyman
v.
F & M Auto Brokers, Inc.

Dear Parties:

As of this date we have not received the required fees from the business in this matter. Accordingly, we must decline to administer this case and have closed our file. According to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Any payment submitted by a party will be refunded shortly.

Further, because the business' failure to remit the foregoing constitutes a failure to adhere to our policies regarding consumer claims, we may decline to administer future consumer arbitrations involving F & M Auto Brokers, Inc. The AAA's consumer policies can be found on the AAA's website, www.adr.org. **We request that F & M Auto Brokers, Inc. remove the AAA name from its consumer arbitration clause so that there is no confusion to the public regarding our decision.**

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the date of this letter.

If you have any questions, please email ConsumerFiling@adr.org.

Sincerely,

Consumer Filing Team
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

# EXHIBIT 5

# SECRETARY OF STATE

Odometer Disclosure Statement for Title Transfers

This space for use by Secretary of State

Secretary of State
Vehicle Services Department
501 S. Second St. Rm. 014
Springfield, IL 62756

www.cyberdriveillinoise.com

Federal and State laws require that you state the mileage in a transfer of ownership . Failure to complete or providing a false statement may result in fines and/or imprisonment.

I, S&M AUTO BROKERS INC, certify to the best of my knowledge that the odometer reading now reads 17,137 (no tenths) miles and reflects the actual mileage of the vehicle described below, unless one of the following statements is checked:

☐ The mileage stated is in excess of its mechanical limits.

☐ The odometer reading is not the actual mileage. Warning odometer discrepancy.

| Year | Make | Model | Body Style | Color |
|---|---|---|---|---|
| 2013 | INFINITI | FX37 | CARRY ALL | WHITE |

Vehicle Identification Number (VIN)

J N 8 C S 1 M W 8 D M 1 7 0 2 6 5

Seller's Signature [signature]

Seller's Printed Name S&M AUTO BROKERS INC

Seller's Address 5801 S. WESTERN AVE

CHICAGO IL 60636-

City, State, Zip Code

Seller's Certification Date 10/16/2015

To be completed by the buyer

Buyer's Signature [signature]

Buyer's Printed Name DONALDSON C TWYMAN

Buyer's Address 9057 MERCER DR

FISHERS IN 46038

City, State, Zip Code

Buyer's Acknowledgement Date 10/16/2015

# EXHIBIT 6

Dreyer & Reinbo Display Vehicle History XR0160-01

| <----- VIN ------> | <- Vehicle Info -> | Sold On | Sold By |
|---|---|---|---|
| JN8CS1MW8DM 170265 | IN FX37 13 White | 12/13/12 | RAY CATENA INFINITI, INC., EDISO |

| Date | Odom | W/O# | Sel | Ln | LC* | Job* | Description/Comment | TechID | Auth |
|---|---|---|---|---|---|---|---|---|---|
| 3/20/15 | 19,202 | 33707 | _ | 01 | IG | VOID | VOID | HAMI18 | Yes |
| 11/18/14 | 17,012 | 86257 | _ | 01 | C | XINSP | MULTI POINT INSP SERVICE<br>MULTI POINT INSP SERVICE | MALD27 | Yes |
| | | | _ | 02 | C | I0001 | Body Mechanical Service<br>CUSTOMER STATES CHECK ENGINE LIGHT IS ON-<br>ENGINE SHAKES WHEN ACCELERATING<br>FOUND SLUDGE AND OIL IN CYLINDER 1 VCAN<br>1105142809948. ENGINE REPLACED DENIED | MALD27 | Yes |
| | | | _ | 03 | C | I0001 | Body Mechanical Service<br>CUSTOMER STATES VDC SLIP/BRAKE LIGHT COME ON<br>FOUND REAR PADS LOW RECC REAR PADS AND REAR<br>ROTTORS RUST AND HEATS SPOTS | MALD27 | Yes |

More...

F3=Exit F4=List* F7=Print F11=Report Setup F12=Previous
F22=Top of List (Newest) F23=Bottom of List (Oldest)