```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

DONALDSON TWYMAN,                 )  Docket No. 16 C 04182
              Plaintiff,          )  Chicago, Illinois
                                  )  April 12, 2017
         v.                       )  10:12 a.m.
                                  )
S&M AUTO BROKERS, INC., SAED      )
IHMOUD and MOHAMMED IHMOUD,       )
              Defendants.         )


           TRANSCRIPT OF PROCEEDINGS - STATUS/MOTION
           BEFORE THE HONORABLE VIRGINIA M. KENDALL


APPEARANCES:

For the Plaintiff:       DiTOMMASO LUBIN PC by
                         MR. PETER SCOTT LUBIN
                         17 W 220 22nd Street, Suite 410
                         Oakbrook Terrace, Illinois  60181

For the Defendants:      LAW OFFICE OF JOEL A. BRODSKY by
                         MR. JOEL ALAN BRODSKY
                         8 South Michigan Avenue, Suite 3200
                         Chicago, Illinois  60603

For the Respondent       NORTHCUTT FIRM, PC by
Donald Szczesniak:       MR. LANCE D. NORTHCUTT
                         105 West Adams Street, Suite 2800
                         Chicago, Illinois  60603

Also Present:            Mr. Donaldson Twyman
                         Mr. Mohammed Ihmoud
                         Mr. Daniel Konicek
                         Mr. Donald Szczesniak


Court Reporter:          GAYLE A. McGUIGAN, CSR, RMR, CRR
                         Federal Official Court Reporter
                         219 South Dearborn, Room 2318-A
                         Chicago, Illinois 60604
                         (312) 435-6047
                         Gayle_McGuigan@ilnd.uscourts.gov
```

1      (Proceedings heard in open court:)
2           THE CLERK:  16 C 4182, Twyman versus S&M Auto Brokers.
3           MR. LUBIN:  Good morning, your Honor.  Peter Lubin for
4   the plaintiff.  This is my client, Donaldson Twyman.
5           THE COURT:  Good morning, Mr. Twyman.
6           MR. LUBIN:  I also brought counsel to represent me,
7   because you indicated that you might be putting us on the
8   witness stand.
9           So this is Dan Konicek, who, if you do that -- if you
10  don't do that, he's not going to file his appearance.
11          THE COURT:  That's fine.
12          Good morning, Mr. -- Tonicek was it?
13          MR. KONICEK:  Konicek.
14          THE COURT:  Spell it for the court reporter.
15          MR. KONICEK:  K-O-N-I-C-E-K.
16          THE COURT:  Okay.
17          MR. NORTHCUTT:  Good morning, your Honor.  Lance
18  Northcutt, N-O-R-T-H-C-U-T-T, on behalf of Mr. Donald
19  Sczczesniak.  He's here, your Honor -- I appreciated the
20  Court's consideration excusing us for today.
21          Insofar as his interests are implicated, he came here.
22  There's been some developments, which I can inform the Court at
23  the appropriate time, that required me to be here.
24          THE COURT:  Okay.  Good morning.
25          Can we get his name spelled on the record?  I think

1   it's in the filings, but -- for the court reporter today.

2            MR. SZCZESNIAK: Donald Szczesniak. S-Z, as in zebra,
3   C in cat, Z in zebra, E-S-N, as in Nancy, I-A-K.

4            THE COURT: Okay.

5            MR. BRODSKY: Good morning, your Honor. Joel Brodsky
6   on behalf of S&M Auto. One of the principals of S&M Auto is
7   here with me today. That would be Mike Ihmoud, Mohammed
8   Ihmoud.

9            THE COURT: Good morning, Mr. Mohammed.

10           MR. IHMOUD: Good morning.

11           THE COURT: All right. So I have a status here. And
12  I required the parties to bring their clients in, because I
13  rarely have such a situation where there is such an aggressive
14  confrontation occurring between the parties.

15           I've had a chance to go through the docket in great
16  detail and to listen to the tape recording of the deposition
17  that is the subject of dispute here.

18           And the reason that I want the lawyers -- I mean, the
19  parties to be present is because if I move forward with
20  determining whether sanctions are appropriate, I'm going to
21  have a hearing. And if I have a hearing, I'm going to allow
22  both sides to call witnesses, and the witnesses are going to
23  tell the story about whether or not all of these accusations
24  are true or false. And what that means is it's going to cost
25  you money. It's going to cost you money to do that.

1          And the case that is before the Court is a case that
2    is not a large dollar amount case, potentially; and if we start
3    talking about having hearings that last more than a day or two,
4    then that money is going to come from someplace, and it will
5    be -- obviously, you'll have to pay your attorney to represent
6    you during the process.
7          I'll focus on you primarily, Mr. Mohammed, as the
8    person to be aware that the cost of putting on this hearing
9    could increase, primarily on your side, because after reading
10   everything and reviewing everything, it is my strong opinion
11   that Mr. Brodsky has been overly aggressive in this case, that
12   he's not following the rules of professional conduct, and that
13   he is filing a lot of motions to exacerbate the discovery
14   process.  And so it's going to be a hearing primarily to
15   determine whether sanctions should be applied to him.
16         And, of course, because I am an open-minded judge, I
17   need to look into accusations against the expert, which are
18   very serious, if that expert is to be used.  And if they're
19   false, that is more of a situation for you, because if he made
20   false accusations against the witnesses in the case, that also
21   is an obstructive behavior.
22         So, you see, we've taken what is an odometer-fixing
23   case and we've blown it into an enormous disciplinary matter.
24         And I just want everyone to be aware of my perspective
25   regarding it, because I have to do my work once those

1     accusations are levied, and they're very serious accusations.

2             MR. BRODSKY:  Ms. Weinberger, Diane Weinberger, who
3     couldn't make it here today, she's elderly and lives a long way
4     away, is available by telephone.  I asked her if she would be
5     available by telephone, and she said she could be.

6             THE COURT:  For what reason?

7             MR. BRODSKY:  Because she's the one that signed the
8     affidavit that Mr. Szczesniak was out at her house and --

9             THE COURT:  The purpose of this status today is to
10    really inform the parties about where we're heading, and
11    because -- because I have concerns about the level of
12    acrimonious behavior on the part of the lawyers -- primarily
13    Mr. Brodsky.  I mean, after reading everything and listening to
14    everything, it looks like Mr. Lubin is defending himself 99
15    percent of the time, trying to maintain a level of decorum that
16    is appropriate.

17            But that doesn't mean I don't take Mr. Brodsky's
18    accusations frivolously.  I have to look into them because
19    they've been made by an officer of the court.  And, believe me,
20    if they're false, I have no problem levying the appropriate
21    sanction against a lawyer who misrepresents or lies to the
22    Court in such a manner to hijack a litigation.

23            So I want the principals who are in this, what I think
24    is almost like what we would call the tail-wagging-the-dog type
25    of situation, to understand that if I go down this path, it's

1  going to be a costly venture, and it's one that you should be
2  aware of.  All right?
3          Do you understand that, Mr. Mohammed?
4          MR. IHMOUD:  I do, yes.
5          THE COURT:  Okay.  All right.
6          MR. BRODSKY:  Also --
7          THE COURT:  Hold on.
8          And do you understand that, sir?
9          MR. TWYMAN:  Yes, ma'am, I do.
10         THE COURT:  Okay.  All right.  So the reason that I do
11 this is because in the Civil Rules of Procedure, we talk about
12 the cost of litigation, and judges are obligated to take into
13 account what that means to you.  And because I have this
14 unfortunate unprofessional behavior that I have to dig into, I
15 wanted to make sure that you're hearing it from the judge and
16 not from someone who I'm not quite sure is conveying it.  All
17 right?
18         All right.  Go ahead, Mr. Brodsky.  What do you have
19 to say?
20         MR. BRODSKY:  We're talking about cost.  There is a
21 declaratory judgment action brought by Erie Insurance Company
22 about whether or not they were going to cover this loss -- or
23 this claim.  The judge in the Circuit Court is going to be
24 ruling on that issue I believe on April -- I'm sorry -- the
25 20th, yes, the 20th, next week, Thursday of next week, on

```
 1   whether or not there's --
 2           MR. LUBIN:  Judge, I'd like to comment on that.
 3           MR. BRODSKY:  -- whether or not there's insurance
 4   coverage.
 5           THE COURT:  Gentlemen, do you have availability on
 6   either May 9th or May 10th for a hearing on this matter?
 7           MR. BRODSKY:  On which -- on which issue, your Honor?
 8           THE COURT:  I'm sorry?
 9           MR. BRODSKY:  On what -- what would be the hearing?
10           THE COURT:  It's going to be on whether sanctions
11   should be levied.  It's on your flying sanctions back and
12   forth.
13           MR. LUBIN:  I haven't filed any motion for sanctions,
14   just so it's clear, Judge.
15           THE COURT:  Well, you have to defend yourself,
16   unfortunately, against his accusations, and so does the -- and
17   so does the expert, he has to defend himself against the
18   accusations.
19           MR. LUBIN:  That's correct.  I just want to be clear.
20   We have not filed any motions for -- what is the -- what's the
21   date, your Honor, that you said --
22           THE COURT:  May 9th or 10th.
23           MR. LUBIN:  May 9th or 10th are fine, either one, with
24   me.
25           Judge, the only thing I had asked to file, which
```

1  wasn't part of the record that you reviewed, there's about -- I
2  think there's 12 -- 11 emails that I received from Mr. Brodsky
3  that are extremely unprofessional that I would like to make
4  part of the record at some point.
5             THE COURT:  Yeah, we can do that during my hearing.
6             MR. LUBIN:  Okay.
7             MR. BRODSKY:  Judge, I -- two things:
8             First of all, I think we should then -- I have an
9  opportunity to get my own counsel.
10            THE COURT:  Absolutely, you should.
11            So right now we have the defendants' motion for
12 sanctions regarding Mr. -- is it Szczesniak?  Is that how you
13 say it?
14            MR. SZCZESNIAK:  Yes, your Honor.
15            THE COURT:  Okay.  So it's appropriate that you have
16 representation because the accusations against you are strong,
17 and the accusations against you in that he's affiliating you
18 with the improper expert --
19            MR. LUBIN:  I think the gist of it is that I didn't
20 fire -- that I haven't fired Mr. Szczesniak.
21            THE COURT:  Right -- well, that you were essentially
22 presenting perjured testimony to the Court would be the
23 accusation, you know, the idea that Mr. Donald Szczesniak is a
24 sham.
25            MR. LUBIN:  If that's going to be the case, then we

1  would need to subpoena for the hearing the Mannheim report that
2  inspected the car before they bought it.  I can subpoena the
3  Mannheim witness.  Their report matches to the word, that they
4  received before they sold the car to Mr. Twyman, matches to the
5  word in Mr. Szczesniak's report --
6           THE COURT:  And where is the Mannheim report?
7           MR. LUBIN:  That -- it's in -- it's in the record, but
8  Mannheim rated this car 38 --
9           THE COURT:  No, we're not going to go there --
10          MR. LUBIN:  All I'm saying is that if I need to defend
11 Mr. Szczesniak and say whether I manufactured the case, then
12 there's a Mannheim witness who will say that they did the same
13 thing before I even got involved in the case.
14          THE COURT:  Okay.
15          MR. BRODSKY:  But there's nothing in that report --
16          THE COURT:  The defendants' motion to strike the Rule
17 56 statement of additional facts is denied, because it was
18 merely a mistake in the reference to the rule, as opposed to
19 56.1(b)(3)(C), he said 56.1(c).  So that's denied.
20          The issue regarding the protective order on the expert
21 deps is taken under advisement with the motion for sanctions,
22 in the same way as plaintiff's motion for protective order is
23 also taken under advisement.
24          Mr. Brodsky believes that the deposition audio tape
25 should be sealed.

1         MR. BRODSKY:  Yes.

2         THE COURT:  And that's because why?

3         MR. BRODSKY:  Well, as I state in the motion, your

4    Honor, the Seventh Circuit in the case of *Smith versus*

5    *United States District Court Officers* has ruled that a

6    Court's -- that the tape or -- or a court reporter's audio

7    recording of a deposition is not an official judicial record

8    and, therefore, should not be filed as part of the record --

9         THE COURT:  Yeah, that's a little bit different than

10   what we're doing here.  What we're doing here is to determine

11   whether you're being professional.  I'm much less concerned

12   about whether the deposition, which is the transcript of the --

13   I mean, the -- yes, the transcript of the deposition is the

14   official record, and I don't think anyone is disputing that.

15        However, the tape recording is evidence of behavior

16   that I'm going to take under advisement when I review whether

17   your motion for sanctions against the plaintiffs actually is

18   sanctionable based upon whether you are engaging in misconduct.

19        So did you tell me whether the 9th or the 10th is

20   available for you?

21        MR. BRODSKY:  First, I'll need opportunity, if you're

22   not striking their statement of additional facts, which has I

23   think 391 pages of exhibits with new affidavits that weren't in

24   the initial statement of facts, I'm going to need time to

25   respond -- to file a response to that, to either contest those

1  new additional facts, admit or deny them, and also have an
2  opportunity to present counter-affidavits.
3        THE COURT:  No.  I will take a look at that and make a
4  determination as to whether it's appropriate, but that's not my
5  big concern right now.
6        So are you available on the 9th or the 10th?
7        MR. BRODSKY:  Well, Judge, I need -- that would depend
8  upon -- I'm going to be out of the country from April 20th to
9  May 5th, and I, as I said, will need to inquire --
10       THE COURT:  Where are you going?
11       MR. BRODSKY:  Paris.
12       THE COURT:  On vacation?
13       MR. BRODSKY:  A short trip.  Ten days.  So I would
14 need an opportunity to get --
15       THE COURT:  April 20th to the 5th is actually 15 days.
16       MR. BRODSKY:  I'll be out of the -- I'll be out from
17 the 24th to May 5th, not in the office, so I need an
18 opportunity to get that attorney, and so I don't think that one
19 week I have before I leave --
20       THE COURT:  Okay.  June 9th.  The hearing will be June
21 9th at 10:00 o'clock --
22       MR. BRODSKY:  Can I just take a quick look --
23       THE COURT:  -- and I will frame the parameters of it
24 in a docket entry today.
25       All of you lawyers should be present.

1      You don't have to be present at it -- because this is
2  a sanction issue -- if you are too busy.
3          MR. TWYMAN:  (Nods affirmatively.)
4          THE COURT:  And you don't have to be present either,
5  sir.  I wanted you to know what we're going to be doing.
6          MR. IHMOUD:  Thank you.
7          THE COURT:  And the hearing will be scheduled for that
8  day, so don't schedule anything else that day.
9          And if there's subpoenas that need to be issued
10 pursuant to your accusations and your defense, you're permitted
11 to do so.
12         MR. BRODSKY:  Will Ms. Weinberger be able to testify
13 telephonically?
14         THE COURT:  It's complete -- oh, where is she?
15         MR. BRODSKY:  Ms. Weinberger lives in -- I forget the
16 town, but it's about 80 miles out of Chicago, and she is
17 elderly.  And we will need her -- definitely will need her
18 testimony.  Her testimony is going to be absolutely required.
19 I can get her exact address, if you give me one second.
20         THE COURT:  You look into whether she can get to a
21 place where we can do video, and we can have her by video.  We
22 have the opportunity to do that, so see if she could.
23         MR. LUBIN:  I would actually object to that, Judge,
24 because, you know, this is a serious accusation against me, and
25 even more serious against Mr. Szczesniak, and her credibility

1    is at issue.  Cross-examining someone by video on something
2    this serious -- she's not that elderly.  There's nothing about
3    her medical condition that's put in.  She's leveled very
4    serious accusations against --
5             THE COURT:  Okay.
6             MR. LUBIN:  -- Mr. Szczesniak, and I think it should
7    be here --
8             THE COURT:  You can file -- you can file a motion.
9    Pursuant to the rules, if you don't -- if you don't want her to
10   appear in person.
11            MR. BRODSKY:  I'd like her to appear.  I'm just
12   concerned --
13            THE COURT:  You can file a motion pursuant to the
14   rules if you don't want her to appear in person.  And when it
15   comes in, I'll give you a time to respond, and I'll rule.
16   Okay?
17            Is everybody understanding the purpose of today?
18            Did you have something else you wanted to add, sir?
19            MR. NORTHCUTT:  Your Honor, there are a couple brief
20   issues I wish to address with the Court.
21            First, if -- and I understand the Court's concern
22   about taking these allegations at face value for purposes of
23   determining where to go from here.
24            There are a litany of accusations, including
25   manufacturing a son, doctor's note.  We are in a situation

1    where my client will have to spend tens of thousands of dollars
2    bringing doctors, family members, other people to disprove --
3              THE COURT:  Right, I understand this.  This is why I
4    brought everybody here.  This is why I brought everyone here.
5              So, for example, imagine the two ways it can play out:
6              It can play out poorly for your client, and then that
7    plays into whether or not a summary judgment is granted when I
8    go forward with the substantive case;
9              But it could also play out in such a way that the
10   accusations are false, and somebody has committed such
11   misconduct that the sanction is the dismissal of the case or
12   all of the attorneys fees paid for by the individual who
13   created the false accusations.
14             Those are all on the table right now.
15             MR. NORTHCUTT:  And, your Honor, for our purposes,
16   because I had said last time in the interest of restraint, we
17   would -- we did not file the sanctions motion.
18             I have put Mr. Brodsky on notice, and he's not
19   responded to my email on Monday, that now that he's actually
20   going to go forward with this, we will be filing an appropriate
21   motion subject to the 21-day parameters of Rule 11.
22             THE COURT:  That's fine.
23             MR. NORTHCUTT:  The other --
24             THE COURT:  We have -- you know the date now.  It's
25   June 9th.  So you need to do that by the 19th.

1              MR. NORTHCUTT:  Your Honor, with respect to that, I
2  teach a Trial Advocacy course with the Chicago Kent College of
3  Law in Ireland that bleeds into that week.
4              I think I will be back by then, but I can't be assured
5  of that.
6              If there is any opportunity to perhaps go to the
7  following week, I would beg the Court's indulgence.  Otherwise,
8  I have to make appropriate arrangements --
9              THE COURT:  I'll be teaching in China the next week,
10 so I don't think we're going to do it that week.  And then I
11 start a jury trial --
12             MR. LUBIN:  How do I get one of those assignments?
13             THE COURT:  You have to be a very professional and
14 hard-working judge.
15             MR. LUBIN:  I was talking about the Ireland trip, too.
16             THE COURT:  So it's June 5th is the week that you're
17 in Ireland?
18             MR. NORTHCUTT:  I am either going to be coming back on
19 the 8th or coming back on the 5th, tentatively.  The travel
20 arrangements have not been finalized, your Honor.
21             THE COURT:  Yeah, if you can -- so my unfortunate
22 situation is that I'm on trial for three days the 5th through
23 the 7th, and then I only have the 8th and the 9th available.
24 I'm gone the week of the 12th.  And then I begin a two-week
25 jury trial, and then I begin another two-week jury trial, and

1   now we're looking at July 17, 18, right in there.  So that
2   would be the time frame.
3            MR. NORTHCUTT:  Your Honor, I don't want to go that
4   far out or try to disrupt the Court's schedule.
5            If we could just maintain the June 9th date --
6            THE COURT:  We'll hold onto it; but if there's some
7   conflict, let me know sooner rather than later.
8            MR. BRODSKY:  May I just say one thing?
9            For example, I looked at that motion again, and at no
10  time did I say that Mr. Szczesniak made up a son.  All I said
11  was that when I ran his background search, all his other family
12  members came up on the LexisNexis background search, but the
13  son that gave the affidavit didn't show up, and that I wanted
14  more time to look into that.
15           So when somebody says that I created a son or -- or
16  said that he doesn't have a son, that's not what the motion
17  says.
18           THE COURT:  I think it says that the son who submitted
19  an affidavit does not exist.
20           MR. BRODSKY:  No, that's not what the motion says at
21  all.  It doesn't say anything close to that.  And this is
22  why --
23           THE COURT:  Well, that's why we're going to have a
24  hearing.
25           MR. BRODSKY:  Yeah, I understand, but just -- I mean

1   just one second.  It's going to be in the -- here.
2           MR. NORTHCUTT:  Your Honor, while Mr. Brodsky is
3   looking for that, whatever the characterization is, the
4   insinuation was he made up a son.
5           MR. BRODSKY:  No.  It's not.
6           MR. NORTHCUTT:  And for my purpose --
7           MR. BRODSKY:  If I may, I wasn't -- I didn't interrupt
8   counsel.
9           An examination of the LexisNexis public record search
10  that was done on Donald Szczesniak states that while he does
11  have a wife named Jennifer, a mother named Ruthann, and a son
12  named Zachary, there is no son named Luke.  And then two
13  paragraphs later, also paragraph 8, I go to -- I -- plaintiff
14  is replying very quickly because this Court sometimes rules
15  very quickly before I've had an opportunity to file a reply.
16  Defendant would like an opportunity to try to verify facts and
17  declarations to see, for example, if the letter from C. Ronald
18  Lindberg is genuine or to verify if other information, like
19  does Luke exist, does he own a car, if that's all true.
20          So I'm not accusing him of creating a son.  What I'm
21  saying is it doesn't appear in the very -- usually very
22  accurate background search, and I want an opportunity to see if
23  it does exist -- if he does, in fact, exist.  I don't know if
24  he does or not.  That's all I said.
25          I never at any time accused him of creating a son --

1             THE COURT:  That, I think, is maybe the least of your
2    issues --
3             MR. BRODSKY:  Well --
4             THE COURT:  -- that we're looking at.
5             MR. BRODSKY:  -- that seems the one that comes up all
6    the time, though.
7             THE COURT:  So I highly recommend that if you feel the
8    need, that you get a lawyer to represent you --
9             MR. BRODSKY:  Uh-hum.
10            THE COURT:  -- because as someone who is considering
11   whether sanctions should be levied, you do have a right to have
12   representation at that hearing.  Okay?
13            MR. BRODSKY:  Yes, your Honor.
14            THE COURT:  All right.  Thanks, folks.
15            MR. LUBIN:  Judge, our reply in support of summary
16   judgment, since we need it to take the expert, we just need it
17   entered and continued, our -- the date -- due date for our
18   reply brief, until we get the expert's deposition.
19            THE COURT:  You will have it entered and continued
20   until I make a ruling on these motions.
21            MR. LUBIN:  Thank you so much, your Honor.
22            MR. NORTHCUTT:  Finally, your Honor, with respect to
23   the procedural posture of the hearing, are we to provide
24   whatever witnesses the Court may require?
25            THE COURT:  That's right.  It's up to you to defend

1  yourself against the accusations.  Currently, it is you as
2  being -- defending your clients against accusations.  I
3  understand you'll be filing something, which, if you're doing
4  so, you need to do quickly.  And then Mr. Brodsky will have to
5  defend against your accusations.  So you each have a burden of
6  moving forward.
7         But I'm the one who is going to make this call, and
8  I'm not going to permit my courtroom, ever, to be used as a
9  circus.  So we'll make the call.
10         MR. BRODSKY:  You did see the exhibits that I attached
11  to my response?
12         THE COURT:  I will take a look at them.
13         Thank you very much.
14     (Proceedings concluded at 10:34 a.m.)
15                     C E R T I F I C A T E
16     I certify that the foregoing is a correct transcript of the
17  record of proceedings in the above-entitled matter.
18
19
20  */s/ GAYLE A. McGUIGAN*                          *April 17, 2017*
    Gayle A. McGuigan, CSR, RMR, CRR                 Date
    Official Court Reporter