```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    DONALDSON TWYMAN,                 )  Docket No. 16 C 04182
                 Plaintiff,             )  Chicago, Illinois
 4                                      )  May 31, 2017
                 v.                     )  9:56 a.m.
 5                                      )
      S&M AUTO BROKERS, INC., SAED      )
 6    IHMOUD and MOHAMMED IHMOUD,       )
                 Defendants.            )
 7

 8                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE VIRGINIA M. KENDALL
 9

10    APPEARANCES:

11    For the Plaintiff:      DiTOMMASO LUBIN PC by
                              MR. PETER SCOTT LUBIN
12                            MR. ANDREW MURPHY
                              17 W 220 22nd Street, Suite 410
13                            Oakbrook Terrace, Illinois  60181

14    For the Defendants:     JAMES J. ROCHE AND ASSOCIATES by
                              MR. JAMES J. ROCHE
15                            642 North Dearborn
                              Chicago, Illinois  60610
16
      For the Respondent      NORTHCUTT FIRM, PC by
17    Donald Szczesniak:      MR. TIMOTHY KEISER
                              105 West Adams Street, Suite 2800
18                            Chicago, Illinois  60603

19


20


21
      Court Reporter:         GAYLE A. McGUIGAN, CSR, RMR, CRR
22                            Federal Official Court Reporter
                              219 South Dearborn, Room 2318-A
23                            Chicago, Illinois 60604
                              (312) 435-6047
24                            Gayle_McGuigan@ilnd.uscourts.gov

25
```

```
 1   A P P E A R A N C E S :   (Continued)
 2
 3
 4   For Joel Brodsky:        GORDON & REES LLP by
                              MR. RYAN THOMAS BROWN
 5                            MR. BRIAN M. ROTH
                              One North Franklin, Suite 800
 6                            Chicago, Illinois   60606

 7                            LOPEZ & LOPEZ LTD by
                              MR. JOSEPH R. LOPEZ
 8                            53 West Jackson Blvd., Suite 1651
                              Chicago, Illinois   60604
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1          (Proceedings heard in open court:)
 2              THE CLERK:  16 C 4182, Twyman versus S & M Auto.
 3              MR. ROCHE:  Good morning, your Honor.  James Roche for
 4    the defendant.  I just filed my appearance a couple weeks ago.
 5              THE COURT:  Tell me your name again?  James Roche?
 6              MR. ROCHE:  Roche.  R-O-C-H-E.  James.
 7              THE COURT:  Okay.  Good morning.
 8              MR. IHMOUD:  Good morning, your Honor.
 9              THE COURT:  Good morning.
10              MR. IHMOUD:  Mohammed --
11              MR. ROCHE:  My client.
12              COURT REPORTER:  I'm sorry, I can't hear you.
13              MR. IHMOUD:  Mohammed Ihmoud from S & M Auto.
14              THE COURT:  So he's the defendant principal.
15          Good morning.
16              MR. LOPEZ:  Good morning, your Honor.  Joseph Lopez
17    for Mr. Brodsky.
18              THE COURT:  Okay.  Good morning.
19              MR. ROTH:  Good morning, your Honor.  Brian Roth for
20    Mr. Brodsky.
21              THE COURT:  Okay.
22              COURT REPORTER:  I'm sorry, your name?
23              MR. BROWN:  My apologies.  Ryan Brown of
24    Gordon & Rees.
25              THE COURT:  Okay.  Good morning.
```

1  MR. KEISER: Good morning, your Honor. Timothy Keiser
2  on behalf of Donald Szczesniak, filling in for Lance Northcutt
3  this morning.
4  THE COURT: Okay. Good morning.
5  MR. MURPHY: Andrew Murphy on behalf of plaintiff.
6  THE COURT: Good morning.
7  MR. LUBIN: Pete Lubin on behalf of plaintiff.
8  THE COURT: Okay. All right, folks.
9  So I received a flurry of various motions, as you
10 know, going back and forth over the last couple weeks, trying
11 to sort through whether we're having our hearing on a
12 particular day and who is representing whom.
13 And it's my understanding that -- let me just make
14 sure I get all the understanding.
15 I know that you, Mr. Lopez, want to come in in order
16 to represent Mr. Brodsky at the hearing.
17 MR. LOPEZ: That's correct.
18 THE COURT: But you don't want the hearing date of
19 June 8.
20 MR. LOPEZ: Judge, well, actually June 9th.
21 THE COURT: Oh, June 9th. Okay.
22 MR. LOPEZ: Because I have a previous commitment, I
23 can't be here that day --
24 THE COURT: Okay.
25 MR. LOPEZ: -- or I would be here.

1      THE COURT: And then, Mr. Roche, you have taken over
2 for Mr. Brodsky; is that correct?
3      MR. ROCHE: Yes, your Honor. And if I could inject,
4 your Honor?
5      THE COURT: Please.
6      MR. ROCHE: When my client hired me -- we represent 70
7 new car dealers. This is not unknown to us.
8      However, your Honor, when I looked at the record and
9 heard the story, it's like the voice of reason somehow has
10 gotten lost in this case.
11      THE COURT: Oh, I think that it's been right here all
12 along. (Indicating.)
13      MR. ROCHE: So I -- what I tried to do, your Honor, is
14 reach out to, you know, ten different attorneys on the case.
15 Last week I was the guest of Judge Durkin for a week. We just
16 finished on Friday on his case. So I've been playing a little
17 bit of a catch-up. But never in my wild imagination would I
18 expect ten attorneys on a car -- $10,000 used car that maybe
19 was in an accident or maybe it wasn't.
20      But on the other hand, I don't know how this got so
21 out of whack, but -- so the only thing I could think of, your
22 Honor, to try and put Humpty Dumpty back together again is my
23 suggestion would be we stay all these motions, don't use up
24 this Court's time on this tit-for-tat going back and forth.
25 Maybe we can stay those motions. And I'd love to have a

1  settlement conference.  My client wants to settle this case,
2  move on with his life, and try to make some money selling cars,
3  not spending more time in the United States District Court than
4  most licensed attorneys do.
5            THE COURT:  Right.
6            MR. ROCHE:  So that's my thought.
7            THE COURT:  Let me give, before the plaintiffs speak
8  regarding what I'm sure will be their determination to hold the
9  hearing, remember that a contempt hearing is a hearing that I
10 am completely capable of holding and have jurisdiction over
11 regardless of the status of the case, because the Court has
12 control over her courtroom and has the ability to find an
13 attorney in contempt of court regardless of the underlying
14 matter.  Jurisdiction does not divest if the case is settled or
15 if the case is appealed.
16           So that's something that I bet many of you did not
17 realize, but that is something that I can make a determination
18 regarding without holding your client hostage, so to speak.
19           And I did bring your client in before for the reason
20 that I wanted him to see what was going on, because a case of
21 this size should not have been something that he would be
22 responsible for.
23           MR. ROCHE:  Well, I think that was an excellent idea,
24 your Honor, because it kind of broke the log jam to bring us
25 where we are, and I purposely motioned up before your June 9th

1  date in the hopes that we could save all this energy and time.
2  Look at the attorney's fees we're spending just --
3  THE COURT: Right.
4  MR. ROCHE: -- this morning.
5  THE COURT: But the accusations that have been filed
6  against your client -- your client -- who is the expert's
7  attorney -- your client -- are severe, and he has a reputation
8  to maintain, the accusations against the attorneys in the case
9  are significant, and they have their integrity and licenses to
10 maintain, which is why I have said before: If someone wants to
11 make those types of accusations, do so in good faith, or you
12 yourself will be the one that is held in contempt, which is why
13 we're in the situation that we are in today.
14 So let me hear from plaintiff's attorneys first as to
15 what your desire, or not desire, of trying to sit down with
16 Mr. Roche to resolve the matter and what your position is
17 regarding the hearing and where we stand, okay?
18 MR. MURPHY: Your Honor, we're not opposed to
19 settlement. We just don't want the rumor of settlement being
20 out there to delay resolution of the sanctions motion. And I
21 know there's a motion pending to withdraw some of the
22 sanctionable pleadings --
23 THE COURT: Well, it's not pending. I denied it. I
24 denied the motion to withdraw the pleadings.
25 MR. MURPHY: I thought they filed a joint renewed

```
 1   motion.
 2          THE COURT:  Oh, well, maybe -- I've got a number of
 3   them.
 4          What I have on my plate, which I was going to go
 5   through, is:  I have the plaintiff's corrected motion to
 6   supplement the sanctions motion; I have the plaintiff's motion
 7   to supplement the sanctions motion; I have the plaintiff's Rule
 8   11 motion; the joint renewed motion to withdraw certain
 9   filings; and the motion for continuance of the hearing; and the
10   plaintiff's response in opposition to the motion for
11   continuance of the hearing; and a motion to set a settlement
12   conference.
13          So that's where we stand today.
14          MR. MURPHY:  The plaintiff is not opposed to engaging
15   in settlement discussions.  We're not even opposed to having a
16   settlement conference.  We just don't want to delay resolution
17   of the sanctions motion, and we don't think that having
18   settlement discussions requires delaying the resolution of that
19   sanctions motion.
20          THE COURT:  Okay.  Anyone else -- what is your
21   position?
22          MR. KEISER:  We have no objection to the defense --
23   the defense's attempt to withdraw the motions with respect to
24   Mr. Szczesniak.
25          THE COURT:  Yeah.
```

1  MR. KEISER: However, I believe there was some
2  correspondence between the attorneys this morning regarding
3  basically the absence of Mr. Szczesniak's appearance and only
4  pursuing some of the sanctions that did not involve he or his
5  family.
6  THE COURT: Okay. So the way that I see the situation
7  is that -- I've always said the case should sit down for
8  settlement. It is a case that should be settled. It's
9  something that has facts on each side that you can discuss.
10  I know that plaintiff's attorney has wanted punitive
11  damages as one of the accusations, which has really been the
12  stick in the mud, so to speak, in that he alleges a pattern of
13  behavior as opposed to simply this one incident, but it did get
14  out of control.
15  So I would be happy to sit down with you to attempt to
16  settle the case if you want, or I can get one of my colleagues
17  to do so.
18  I don't think we're going to get into a magistrate
19  judge right away. Who do we have on the case?
20  THE CLERK: Judge Finnegan.
21  THE COURT: Oh. Well, maybe Judge Finnegan would do a
22  favor for me and see all of you in a short period of time.
23  As far as the sanctions motion, I'll look at the
24  jurisdictional issue again; but my recollection from the last
25  time that I dealt with this issue is that the Court always has

1  jurisdiction over protecting the integrity of the proceedings
2  before her, and that's why I would not just get rid of it.
3       Now, that doesn't mean that you can't discuss, as part
4  of settlement, some types of withdrawal of claims.  I mean,
5  that's part of what strategy is.  But that's not up to me.
6       My decision is to protect the integrity of this
7  courtroom, and I will do that if that's what is left.
8       So I wouldn't worry about you not getting your
9  hearing, unless you choose not to get your hearing, in a
10 discussion, okay?  So that's number one.
11      Number two, I'm all about trying to get you to settle
12 your matter, because you should.
13      If you want, I can see if Judge Finnegan will sit down
14 with you quickly, or you can come with me and I will sit down
15 with you at some point and try to get it resolved.
16      As far as the June 8th date, I know that that was a
17 problem for you -- 9th.  I keep saying 8th.
18      The problem that I have with moving that date is that
19 I have an international trip with a law school the week -- the
20 following week, and then I'm on trial.  So I'm trying to fit
21 you in someplace that would work.  And I can explore that as
22 well, but it would be -- it would be in a short period of time.
23      When is your next trial?
24      MR. LOPEZ:  In this building?  July --
25      THE COURT:  Well, no, one that you're going to tell me

```
 1  is a conflict.
 2          MR. LOPEZ:  Well, Judge, I have conflicts every day.
 3  Just -- this is a personal family date on the 9th.
 4          THE COURT:  I know.
 5          MR. LOPEZ:  I will make -- I mean, I will -- I
 6  should -- if you're -- do you want to do it in June?
 7          THE COURT:  So I have a trial beginning on the 19th,
 8  and it's possible that it will -- it's possible it will end the
 9  end of the month.  It's possible that the last three days of
10  the week of Independence Day, like 5, 6, and 7, we could fit
11  something in there.  Maybe the 7th of July.
12          MR. LOPEZ:  I'm available.
13          MR. BROWN:  As am I.
14          THE COURT:  Gentlemen, can you move it to the 7th of
15  July?
16          MR. KEISER:  We've resolved our claims against the
17  defendant, your Honor.
18          THE COURT:  So you're done?
19          MR. KEISER:  That's our sincere goal is to be done.
20          THE COURT:  Okay.
21          MR. BROWN:  Just as someone who has worked with all of
22  these lawyers, and I do feel like we've made progress, and made
23  progress even this morning outside of your courtroom, I --
24  there has been a resolution with Mr. Szczesniak, and our hope
25  would be that neither he nor his family members need to
```

1  participate, understanding, of course, that your Honor
2  maintains jurisdiction over everyone who was involved.
3      And we certainly have a copy of a transcript from
4  April 12th that you were very clear on along those lines.
5      Mr. Lubin, who understandably has some concerns about
6  some comments that were made about him, we had a discussion
7  outside about some of the difficulty of withdrawing to the
8  extent that the Court -- what the Court would allow us to
9  withdraw.
10     Also, as Mr. Brodsky is no longer counsel for us --
11 and our hope would be the motion for substitution is granted --
12 some of those comments were made in response for summary
13 judgment.  We would want to make sure with the Court that we
14 aren't waiving our ability to respond to the extent we either
15 withdraw that filing or otherwise amend it.
16     But I'm happy to say on the record, and something
17 Mr. Lubin wanted, was that we will absolutely amend or withdraw
18 with respect to criminal enterprise or calling Mr. Lubin a
19 criminal.
20     There are some other issues that we certainly still
21 need to work through with respect to acknowledging certain
22 aspects and the ties that we view in terms of attorney's fees
23 to the sanctions component.
24     But Mr. Brodsky isn't here today in part because we
25 asked him not to be because there is some personal animosity

1    between the lawyers.

2               THE COURT:  Oh, you're kidding.

3               MR. BROWN:  But he recognizes that he needs to make

4    amends with the Court and come before the Court.

5               THE COURT:  Right.

6               MR. BROWN:  So we're not looking to simply sweep this

7    under the rug.

8               THE COURT:  Right.  And it's not just amends towards

9    the Court.  It's all about just this is a very special place.

10              MR. BROWN:  It is.

11              THE COURT:  And this is where lawyers act like

12   lawyers, and their word means something when they speak it to

13   me.

14              So the motion to substitute counsel is granted.

15              Do you want to talk out in the hallway and tell me

16   after you speak with each other whether I should seek my

17   colleague, Judge Finnegan, to meet with you, or if you would

18   like to meet with me?  Why don't you talk about that?  Because

19   you haven't had that as a proposal.

20              MR. ROCHE:  Judge, we had a conversation outside the

21   Court, and I thought Mr. Lubin and I --

22              MR. LUBIN:  We hadn't quite finished, so that would be

23   a good idea.

24              THE COURT:  Why don't you go out --

25              MR. LUBIN:  The only other thing I would like to say,

1  Judge, is, first of all, I have not engaged in personal
2  animosity with Mr. Brodsky.  I consciously, throughout this
3  case when it started, never addressed one of his emails.  I
4  only talked to him on the phone for ten minutes, and I was
5  friendly.  So the record really is that there is no personal
6  animosity on my part.  It's defending my reputation.
7       And the only other thing I'll say -- then my
8  colleague, Mr. Murphy, is really going to handle this -- is
9  that I didn't ask him just to withdraw the pleadings, because
10 those are in the public record forever, and I don't know how
11 you withdraw something and someone makes abusive comments and
12 you make a finding that they were abusive.  You have to -- it's
13 just like a libel lawsuit --
14      THE COURT:  Well, that's why they're not withdrawn by
15 the Court at this moment.
16      MR. LUBIN:  Right.  So my only point is this:  I asked
17 that if he wants to show true contrition -- that's what they
18 claim, they've told me, when they've discussed with me -- he
19 wants to show contrition.
20      The only way you show contrition is say:  I made false
21 statements that had no basis, I called an officer of the court
22 a criminal, not once, not twice, but like 20 times, in
23 pleadings and emails, on the record, and he says I apologize.
24 And then that's a start for whatever sanction or contempt
25 hearing starts with.

1     And that's the only thing I -- so we have not resolved
2 anything with regard to me because, frankly, no one has ever
3 called me a criminal in a court proceeding, and I consciously
4 didn't respond when he did it in court for about six to eight
5 months because I thought it would just stop.  And I thought,
6 since we couldn't settle the case -- which, believe me, that
7 was our goal from the beginning, to -- because I settle all
8 these cases.  I take two of them, three of them to trial ever,
9 these car cases --
10     THE COURT:  Okay.  I think that you have some
11 reasonable voices here in the courtroom today that might aid
12 you in discussing it on a different level.
13     MR. LUBIN:  I agree.
14     THE COURT:  And that is something that I encourage you
15 to do.  And I am grateful that they are on board.
16     And so why don't you all go out into the hallway and
17 discuss how you would like to proceed.
18     I will be available at a time.  I'm very, very booked
19 with trials, but I will work something out if you want me.  And
20 I'm confident I can get, if not Judge Finnegan, one of my full
21 active colleagues will do me a favor in order to resolve
22 something like this so that we can get it done.  All right?
23     MR. LUBIN:  The only other thing that would be
24 guidance, I think, that would be helpful for all of us would be
25 what -- what did you have entailed that you needed to have a

1     hearing on, that you said the Court had the inherent power,
2     because those are things we can't settle --
3              THE COURT: But I think that that's pretty obvious
4     from the record.
5              MR. LUBIN: Okay.
6              THE COURT: So any time that there was a motion that
7     the other attorney was lying and misstating facts and
8     misrepresenting the truth to the Court is a time where I have
9     the authority to determine whether that is accurate or not.
10    And if the person who accuses the other of wrongdoing is
11    actually falsely accusing the other one of wrongdoing, that
12    individual is subjected to the same contempt proceeding, in my
13    opinion, because he would have been misrepresenting to the
14    Court.
15             So it would be a fact determination based upon the
16    accusations and allegations that were made.
17             And some of those were primarily against your client
18    who was the expert, saying that he had done some illegal and
19    improper and fabricated things. Some of those were just the
20    defamatory statements against you, that you were some type of
21    criminal, some type of -- whatever the terms were that were in
22    the filings. And then you returning to him saying those were
23    all false against him, and that's your motion for sanctions.
24    It's pretty clear. Right?
25             You stand in front of me, I look at you as a lawyer,

1 and that degree means something to me.  When your word comes
2 out, it's the truth; and if it's not, you will be subjected to
3 sanctions.  Okay?
4          So go out in the hallway and come back and tell Lynn
5 whether you want to see me about a settlement.  Okay?  Thanks.
6     (Proceedings concluded at 10:13 a.m.)
7                        C E R T I F I C A T E
8     I certify that the foregoing is a correct transcript of the
9 record of proceedings in the above-entitled matter.

*/s/ GAYLE A. McGUIGAN*                                *July 19, 201*7
Gayle A. McGuigan, CSR, RMR, CRR                           Date
Official Court Reporter